**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SARAH HAPKA, individually, and on behalf of all others similarly situated, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Case No. 2:16-cv-02372-KGG<br>)<br>)<br>)<br>) |
| CARECENTRIX, INC., | |
| Defendant. | |

**ORDER AND FINAL JUDGMENT**

<u>**GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

This matter comes before the Court on Plaintiff's Motion for Final Approval of Class Settlement (Docs. 97-98).

Plaintiff filed her Complaint (Doc. 1) on June 2, 2016 ("Complaint"). In the Complaint, Plaintiff alleges a claim for negligence against Defendant CareCentrix, Inc. ("CareCentrix") arising out of an e-mail spoofing incident that resulted in a CareCentrix employee mistakenly sending the company's 2015 Internal Revenue Service ("IRS") Wage and Tax Statements ("W-2 Forms") for approximately 2,000 employees to a third party fraudster ("E-Mail Security

1

Incident[1]"). *See* Doc. 98 at 2. This resulted in the release of each class member's name, address, Social Security Number, and 2015 wage and withholding information ("Personal Information"). Complaint, Doc. 1 at ¶¶ 10-11. Plaintiff Hapka alleged that she had suffered tax fraud and identity theft as a result of the E-Mail Security Incident. *Id*. at ¶ 6.

CareCentrix moved to dismiss Plaintiff's negligence claim for a variety of reasons—lack of standing, failure to state a claim, lack of subject matter jurisdiction—which motion, after full briefing and multiple notices of supplemental authority, the Court denied on December 19, 2016 in a written Order. *See* Memorandum and Order Denying Motion to Dismiss, Doc. 31. Following the depositions of Plaintiff Hapka and multiple of CareCentrix's corporate representatives, and after extensive written discovery that included multiple informal discovery hearings before this Court as well as litigating to a written order CareCentrix's motion for absent class member discovery (*see* Memorandum and Order Denying Motion to Permit Putative Class Discovery, Doc. 76), the parties notified the Court that they had reached a settlement agreement.

On September 29, 2017, the Court entered an Order preliminarily approving the proposed class action settlement and providing for notice to class members. *See* Doc. 91. In that Order, the Court provisionally certified the settlement class, approved the parties' notice plan, and preliminarily found the settlement to be fair, reasonable, and adequate. *Id*. In short, nothing has occurred that would alter the Court's initial analysis that the settlement was fair, reasonable, and adequate. In fact, the response of the class members (only one request for exclusion and two

---

[1] Unless otherwise noted, the Court adopts the defined terms contained in the Settlement Agreement and Release for purpose of this Order. *See* Settlement Agreement and Release, Doc. 89-1 at ¶¶ 1-24.

objections out of a directly noticed class containing nearly 2,000 class members) further underscores that the settlement is, in fact, fair, reasonable, and adequate. *See* Rapazzini Declaration, Doc. 98-1 at ¶¶ 3, 6-7.

The Court, having reviewed the Settlement Agreement and Release, including the exhibits attached thereto (together, the "Settlement Agreement" or "Settlement"), all objections and comments received regarding the Settlement, the arguments and authorities presented by the parties and their counsel, and the record in the Action, and good cause appearing, hereby reaffirms its findings in the Preliminary Approval Order and grants final approval of the class action settlement.

The Court concludes that the Notice Program has been properly implemented and constitutes the best notice practicable under the circumstances, satisfying due process and the requirements of Rule 23. The Court further finds that the Settlement is fair, reasonable, and adequate. The Court bases this finding on the significant relief provided for the Settlement Class; the factual investigation that occurred in this case; the strengths and weaknesses of Plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of obtaining and maintaining class action status throughout trial; the experience and views of Class Counsel; and the positive reaction of class members. Accordingly,

**IT IS HEREBY ORDERED**:

1. **Class Certification for Settlement Purposes Only.**

The Settlement Agreement provides for a Settlement Class defined as follows:

All current and former employees whose Personal Information was compromised as a result of the e-mail security incident announced by CareCentrix, Inc. in March 2016.

For the foregoing reasons, the Court reaffirms that it is proper to certify, and hereby does finally certify, for settlement purposes only, the Settlement Class pursuant to Federal Rule of Civil Procedure 23.

a. *Numerosity*: Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, there are approximately 2,000 Settlement Class Members and numerosity is not in question.

b. *Commonality*: Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, the Settlement Class Members are joined by the common questions of law and fact that arise from the same event—the data breach. The common questions include: (1) whether CareCentrix failed to adequately protect Settlement Class Members' personal and tax information; (2) whether CareCentrix had a legal duty to adequately protect Settlement Class Members' personal and tax information; (3) whether CareCentrix breached that legal duty; and (4) whether Plaintiff and members of the class suffered injury, including ascertainable losses, as a result of CareCentrix's conduct or failure to act.

c. *Typicality*: Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The named plaintiff's claims need not be identical to those of other class members; instead this element "requires that representative possess the same interests and suffer the same injuries as the proposed class members." *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 680 (D. Kan. 1991). Plaintiff satisfies the typicality requirement because her claim arises from the same factual nexus and is based on the same legal theories as the claims of members of the Settlement Class. Like Plaintiff, other Settlement Class members were subject to the E-mail Security Incident and have suffered identity theft or fraud or remain at an imminent risk of future harm.

4

d.     ***Adequacy of Representation***: The adequacy requirement is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court finds that the Settlement Class Representative has fulfilled her responsibilities on behalf of the Settlement Class. The Court further finds that Class Counsel have prosecuted the case vigorously and in the best interests of the Settlement Class. Adequacy of representation is satisfied.

e.     ***Predominance and Superiority***: Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Where, as here, a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. Predominance does not require that all questions of law or fact be common, but rather that "a significant aspect of the case . . . can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citation and internal quotations omitted). The many common questions of fact and law that arise from the E-mail Security Incident and CareCentrix's alleged conduct predominate over any individualized issues.

Finally, class resolution is superior to other available means for the fair and efficient adjudication of the claims in this case. Here, potential damages suffered by individual class members are relatively low-dollar amounts and may be uneconomical to pursue on an individual basis given the burden and expense of prosecuting individual claims. Moreover, there is little doubt

5

that resolving all class members' claims jointly, particularly through a class-wide settlement negotiated on their behalf by counsel well-versed in class action litigation, is superior to a series of individual lawsuits and promotes judicial economy. *See In re Universal Serv. Fund. Tele. Billing Prac. Litig.*, 219 F.R.D. 661, 679 (D. Kan. 2004).

2. **Settlement Class Representatives and Class Counsel.**

The Court concludes that Barrett J. Vahle and the firm of Stueve Siegel Hanson LLP ("Class Counsel") have fairly and adequately represented the interests of the Settlement Class Members.

The Court further concludes that the Settlement Class Representative Hapka is typical of the Settlement Class and has fairly and adequately represented the interests of the Settlement Class Members.

3. **Jurisdiction.**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), and personal jurisdiction over the parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391.

4. **Findings Concerning Notice.**

The Court finds that the Notice Program has been implemented by the Settlement Administrator and the parties in accordance with the requirements of the Settlement Agreement, and that such Notice Program, including the utilized forms of Notice, constitutes the best notice practicable under the circumstances and satisfies due process and the requirements of Rule 23 of the Federal Rules of Civil Procedure. The Court finds that the Settlement Administrator and parties have complied with the directives of the Preliminary Approval Order and the Court reaffirms its findings concerning notice as set forth in paragraph 6 thereof.

5. **Findings Concerning Claims Process.**

The Court finally approves the Claims Process as a fair and reasonable method to allocate the Settlement benefits among Settlement Class Members. The Court directs that the Settlement Administrator continue to effectuate the Claims Process according to the terms of the Settlement Agreement.

6. **Class Action Fairness Act Notice.**

The Court finds that CareCentrix has caused to be served a notice of the proposed Settlement on appropriate state officials in accordance with the requirements under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). *See* Doc. 93 (declaration regarding CAFA notice).

7. **Requests for Exclusion and Objections to the Settlement.**

Out of nearly 2,000 Settlement Class Members, there were only two timely objections and one Settlement Class Member who timely requested exclusion from the Settlement. The number of objectors represents an extremely small percentage of the Settlement Class. This indicates strong support for the Settlement by Settlement Class Members and weighs strongly in favor of final approval.

The Court has carefully considered all objections of Settlement Class Members. For the foregoing reasons, the Court finds the objections are without merit and are hereby overruled in their entirety.

    a. *Objections to the Monetary Value of the Settlement*: The Echols Objection and Fatovic Objection both criticize the value of the monetary value of the Settlement. *See* Rapazzini Decl., Doc. 98-1, at Ex. A (Echols Objection), Ex. B (Fatovic Objection). At the outset, neither the Echols nor Fatovic Objections state that, individually, they have incurred compensable Out-

of-Pocket Losses in excess of the $5,000 cap provided in the Settlement. *Id*.  Second, neither the Echols nor Fatovic Objections state why the $200 alternative minimum payment to Settlement Class Members is insufficient to compensate Settlement Class Members with less than $200 in Out-of-Pocket Losses for their time and inconvenience. *Id*.

As noted in the motion for final approval, "this Court's role is not to determine whether the proposed settlement has achieved perfection. It is true that something could always be added to every class action settlement to make it more favorable to class members, but that is not the standard by which class action settlements should be measured. Rather . . . this Court's role is limited to determining whether the Settlement is fair, reasonable, and adequate." *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001); *see also, e.g.*, *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (overruling objections and noting that the "essence of settlement is compromise" and that a "settlement will not be rejected solely because it does not provide a complete victory to the plaintiffs.").  For these reasons and those stated by Plaintiff in support of final approval (Doc. 98 at 16-18), the Echols Objection and Fatovic Objection to the monetary value and sufficiency of the substantive settlement relief are overruled.

      b.     ***Objection to the Class Definition***: The Fatovic Objection to the scope of the Settlement Class definition is without merit and is overruled.  The Fatovic Objection alleges that the data breach included the confidential information of another unidentified group of persons that includes, at least, the employee Settlement Class Members' family members. In the submissions in support of final approval, Plaintiff and Class Counsel state that Mr. Fatovic's assertions of a broader data breach are inconsistent with the allegations in the Complaint and not supported by the discovery as understood by Class Counsel. Defendant states that the breach included only specific information for specific individual employees, and not members of their families or

anyone else. Regardless, the Fatovic Objection fails for the simple reason that persons who are not Settlement Class Members are not releasing any claims through the judgment in this case. As such, the Fatovic Objection has no bearing on whether the Settlement is fair, reasonable, and adequate as to the individuals who are Settlement Class Members. For this reason, the Fatovic Objection to the scope of the Settlement Class Definition is overruled.

8. **<u>Findings Concerning the Fairness, Adequacy and Reasonableness of the Settlement.</u>**

The Court finds that this Settlement reflects an outstanding result for the Class in a case with a significant level of risk. The Settlement provides significant monetary benefits to compensate consumers for Out-of-Pocket Losses, as well as preventative relief in the form of Credit Monitoring Services, and important commitments by CareCentrix as to its data security practices. This relief compares very favorably to settlements in other data breach class actions.

a. *No Collusion Between the Parties*: The Court concludes that there was no fraud or collusion in reaching the Settlement. Both parties were represented by informed counsel that reached agreement after nearly a year of arm's-length negotiations.

b. *Serious Questions of Law and Fact Exist, Placing the Outcome of the Litigation in Doubt*: Courts presiding over similar cases have recognized that the "legal issues involved [in data breach litigation] are cutting-edge and unsettled, so that many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL142522-PAM-JJK, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). And proceeding to class certification and trial comes with inherent risk. The presence of doubt about the outcome of this litigation favors settlement "because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,* 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009).

c. *The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation*. The relatively early Settlement in this case benefits the Settlement Class because they can immediately take advantage of Settlement benefits

designed to mitigate and prevent future harm including the Credit Monitoring Services. Settlement Class Members with Out-of-Pocket losses can recover those losses immediately as well. These benefits are particularly favorable when weighed against the risks of continuing to litigate the case.

        d.    ***The Judgment of the Parties that the Settlement is Fair and Reasonable***: "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006) (quoting *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002)). Here, the parties' counsel—who include national leaders in consumer data breach litigation—unanimously support this settlement. *See* Vahle Decl., ¶¶ 20-24; *see also Lucas*, 234 F.R.D. at 695 (emphasizing unanimous support by experienced counsel). The judgment of the parties is that this settlement is fair and reasonable. It provides a meaningful cash recovery and other valuable benefits to the Class now without the very significant risk of the Class ultimately obtaining nothing, and compares favorably with the settlements obtained in other data breach cases around the country.

        e.    ***The Substance and Degree of Opposition to the Settlement***: As explained above, the reaction from Settlement Class Members has been overwhelmingly positive with only a miniscule percentage of Settlement Class Members opting out or objecting. The low percentage of objections demonstrates the reasonableness of the Settlement and supports the Settlement's approval.

        9.    **<u>Final Approval Hearing.</u>** The Court held a Final Approval Hearing on February 15, 2018. Following argument from the parties and considering all objections and comments received regarding the Settlement, the Court concludes as follows: (a) the Settlement is approved as fair, reasonable, and adequate, and finally approved pursuant to Fed. R. Civ. P. 23(e); (b) this matter is finally certified as a class action for settlement purposes pursuant to Fed. R. Civ. P.

23(b)(3) and (e); (c) the Plaintiff's Complaint is dismissed with prejudice pursuant to the terms of the Settlement Agreement; and (d) Settlement Class Members, except Lisa Zane Ostwind of Tempe, Arizona, the lone Settlement Class Member to request to be excluded, are bound by the releases set forth in the Settlement Agreement.

10. **Releases.** As of the Effective Date, the Releases (Doc. 89-1 at ¶¶ 57-58) shall be deemed to have, and by operation of this Order and the Final Judgment shall have, fully and irrevocably released and forever discharged the parties from all released claims as more fully set forth in Section XI of the Settlement Agreement.

11. **Dismissal.** The Court hereby dismisses this Action with prejudice except that the Court retains jurisdiction to enter its ruling on Plaintiff's Motion for an Award of Attorneys' Fees, Expenses, and Costs to Class Counsel and a Class Representative Service Award (Doc. 94). Concurrently with this Order and Final Judgment, the Court will enter an order regarding attorneys' fees and service awards.

12. **Final Judgment.** There is no just reason to delay entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

13. **Continuing Jurisdiction.** The Court retains jurisdiction over this action and the parties, attorneys and Settlement Class Members for all matters relating to this action, including (without limitation) the administration, interpretation, effectuation or enforcement of the Settlement Agreement and this Order, and including any application for fees and expenses incurred in connection with this action.

For the reasons set forth herein, the Court hereby (1) grants final approval of the Settlement; (2) certifies the Settlement Class pursuant to Federal Rules of Civil Procedure 23(b)(3) and (e);

and (3) enters final judgment in this Action. The parties are ordered to carry out the Settlement as provided in the Settlement Agreement.

Dated:  February 15, 2018                           s/ Kenneth G. Gale
                                                                     Kenneth G. Gale
                                                                     United States Magistrate Judge